FILED
9-9-15
SEP 09 2015

Judge Samuel Der-Yeghiayan
U.S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT VAUGHAN | No. 14 CR 639<br><br>Judge Samuel Der-Yeghiayan |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ROBERT VAUGHAN, and his attorney, ALAN BRUNELL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with knowingly attempting to affect commerce by robbery, in that he attempted to take property, namely marijuana, from the person and in the presence of UC against UC's will, by means of actual and threatened force, in violation of Title 18, United States Code, Section 1951.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with knowingly attempting to affect commerce by robbery, in that he attempted to take property, namely marijuana, from the person and in the presence of UC against UC's will, by means of actual and threatened force, in violation of Title 18, United States Code, Section 1951. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about November 3, 2014, at Chicago, in the Northern District of Illinois, Eastern Division, defendant ROBERT VAUGHAN knowingly attempting to affect commerce by robbery, in that he attempted to take property, namely marijuana, from the person and in the presence of UC against UC's will, by means of actual and threatened force, in violation of Title 18, United States Code, Section 1951.

VAUGHAN was a police officer with the Cook County Sheriff's Office, Illinois, and also a member of the High Intensity Drug Trafficking Area (HIDTA) team, a joint federal, state, and local initiative to combat the trafficking of illegal narcotics.

Between 2011 and 2014, Vaughan used his position as a police officer to rob individuals of marijuana, cocaine, and contraband cigarettes, which he kept for his own personal benefit. At times, under the guise of law enforcement operations, Vaughan orchestrated controlled transactions with individuals engaged in either the trafficking of marijuana, cocaine or contraband cigarettes. Immediately after the transactions, VAUGHAN used his police powers to arrest the individuals and handcuff them, but then he released them without charges, and kept some or all of the proceeds of the controlled transactions, which was usually narcotics, for his own personal benefit. At other times, VAUGHAN robbed individuals or homes of marijuana based on information he learned from confidential informants. VAUGHAN then sold the marijuana to various narcotics traffickers in Chicago in exchange for cash, which he retained for his own personal benefit. During the course of these offenses, VAUGHAN worked with CS1 and Officer A, who were also law enforcement officers in Cook County, Illinois.

Prior to November 3, 2014, VAUGHAN, CS1 and Officer A planned to rob an individual who was transporting marijuana from Texas to Illinois. Unbeknownst to VAUGHAN, the individual was an undercover FBI agent (UC). On or about November 3, 2014, VAUGHAN and Officer A approached the UC's car in a Cook County Sheriff's Office vehicle. Vaughan and Officer A had the car's police lights flashing. VAUGHAN and Officer A got out of their car and walk up to the UC's car. VAUGHAN was wearing a vest with the word "Police" on it, and Officer A was wearing a jacket with the words "Sheriff's Police." Both had badges on their vests

and firearms holstered on their belts. VAUGHAN and Officer A questioned the UC. VAUGHAN also walked around the vehicle and inspected it. The UC was ordered out of his vehicle, and Officer A handcuffed the UC. VAUGHAN and Officer A also transferred approximately seventy pounds of marijuana into their police vehicle with the intent to retain the marijuana for their own personal benefit by selling the marijuana and keeping the proceeds of the sale. Based on prior discussions with Officer A and CS1, VAUGHAN anticipated selling the marijuana for a total profit of approximately $300,000. VAUGHAN and Officer A were arrested shortly after robbing the marijuana. Vaughan's attempted robbery of marijuana on November 3, 2014, affected interstate commerce as the UC posing as a marijuana trafficker had traveled in a rental car from Texas to Illinois.

Between 2011 and 2013, VAUGHAN, Officer A, and CS1 engaged in additional robberies of marijuana, cocaine, and contraband cigarettes, as further stated below. In each of these instances, VAUGHAN, Officer A, and CS1 retained the contraband seized for a total profit of approximately $300,000 as follows:

| Date | Location | Drug Type | Quantity Seized |
|---|---|---|---|
| Nov. 2011 | Melrose Park, IL | Marijuana | 50 lbs |
| 2012 | Plainfield, IL | Marijuana | 20 lbs |
| 2012 | Chicago, IL | Marijuana | 5 to 6 lbs |
| 2012 | Cicero, IL | Cocaine | 2 kgs |
| Fall 2012 | Lyons, IL | Marijuana | 30 lbs |
| 2013 | Chicago, IL | Marijuana | 8 lbs |
| 2013 | Forest Park, IL | Marijuana | 10 lbs |

| 7/30/2011 | Chicago, IL | Contraband cigarettes | 300 cartons |

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following

statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

  b. **Offense Level Calculations**.

    i. The base offense level is 20, pursuant to Guideline § 2B3.1.

    ii. The offense level is increased by 3 levels, pursuant to Guideline § 2B3.1(b)(2)(E), because defendant possessed a dangerous weapon during the commission of the offense and the relevant conduct.

    iii. The government's position is that the offense level is increased by 2 levels, pursuant to Guideline § 2B3.1(b)(4)(B), because the victims of the offense and the relevant conduct were physically restrained to facilitate the commission of the offense.

    iv. The offense level is increased by 1 level, pursuant to Guideline § 2B3.1(b)(6), because the offense and the relevant conduct involved controlled substances, namely marijuana and cocaine.

    v. The offense level is increased by 3 levels, pursuant to Guideline § 2B3.1(b)(7)(D), because the offense and the relevant conduct involved approximately $600,000, which is more than $250,000 but less than $800,000.

    vi. The offense level is increased by 2 levels, pursuant to Guideline § 3B1.3, because the defendant abused a position of public trust in

committing the offense, namely his position as a police officer with the Cook County Sheriff's Department.

    vii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    viii.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 28, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 78 to 97 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a

statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

14. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 639.

15. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

16. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

    i.  The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

    ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.

Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

17. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at

sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be

sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

21. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

22. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

23. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or

defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

26. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

27. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 9/9/15

ZACHARY T. FARDON  
United States Attorney

SUNIL R. HARJANI  
Assistant U.S. Attorney

ROBERT VAUGHAN  
Defendant

ALAN BRUNELL  
Attorney for Defendant