IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Case No. 14 CR 639 |
| | ) | |
| | ) | Judge Jorge L. Alonso |
| ROBERT VAUGHAN | ) | |

**ORDER**

The Court denies defendant Robert Vaughan's motions for compassionate release and reduction in sentence under the First Step Act [48, 49]. His motion for appointment of counsel [47] is denied as moot.

**STATEMENT**

Having served approximately four years of a ninety-month sentence for attempted robbery of narcotics in violation of the Hobbs Act, 18 U.S.C. § 1951, defendant Robert Vaughan seeks compassionate release. The government has filed a response brief opposing the motion.

A "court may not modify a term of imprisonment once it has been imposed except" that, among other things:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendants' behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original imprisonment), after consulting the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's most relevant policy statement states that

> the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Comment 1 of this policy statement provides that "extraordinary and compelling reasons" exist if, among other possibilities,

> **(ii)** The defendant is
>     **(I)** suffering from a serious physical or medical condition,
>     . . .
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. 1(A).

    Defendant is incarcerated at Forrest City Low Federal Correctional Institution, and he seeks compassionate release based on the COVID-19 outbreaks at that facility. Defendant explains that he suffers from health issues including hypertension, which puts him at higher risk of death or serious illness if he contracts COVID-19. The government concedes that defendant has exhausted his administrative remedies under the statute.

    The government first contends that, even under the unique circumstances of the COVID-19 pandemic, defendant does not suffer from a serious medical condition that substantially diminishes his ability to protect himself within the environment of a correctional facility. The government argues that the Centers for Disease Control ("CDC") do not list hypertension as a factor that puts an individual at higher risk of contracting a severe case of COVID-19—but the CDC revised its guidelines on June 25, 2020, after the government submitted its brief, to include hypertension as a serious COVID-19 risk factor.[1]

    Even apart from the CDC guidelines, the government acknowledges that there is some evidence that hypertension is correlated with a higher incidence of severe illness in individuals who contract COVID-19. According to an April 2020 CDC report, hypertension was the most common underlying condition for adult patients hospitalized in March 2020, at a rate of 50%, and data from China shows that fatalities were higher for patients with comorbidities including hypertension.

    Still, the government argues that there is no evidence of a causal relationship between hypertension and the seriousness of a patient's case of COVID-19. The government cites an

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html

2

article[2] explaining that, while there is some experimental data suggesting that treating hypertension with angiotensin-converting enzyme (or "ACE") inhibitors (like Lisinopril, which plaintiff has been prescribed (*see* ECF No. 48 at 26) could theoretically "increase the binding of SARS-Cov-2 [*i.e.* the virus that causes COVID-19] to the lung and its pathophysiological effects leading to greater lung injury," experimental studies have also shown that ACE inhibitors may have some beneficial effects that actually reduce the severity of a patient's case of COVID-19. According to the article, none of these effects, either harmful or beneficial, have been demonstrated in patients as yet.

The government may be right that there is little hard evidence suggesting that defendant is at a substantially increased risk of suffering a severe case of COVID-19, but the Court recognizes that the combination of the correlation of serious cases of COVID-19 with hypertension and the existence of a genuine—if unproven—theory, recognized by at least some experts, that ACE inhibitors may worsen COVID-19 is an alarming one for defendant. More alarming still is the June 25 change in the CDC's guidelines. The Court assumes, without deciding, that defendant has a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility, and that extraordinary and compelling reasons exist for a reduction of his sentence, and it proceeds to consider the government's other arguments.

The government argues that the pertinent § 3553(a) factors, which the Court must consider as part of the compassionate release analysis under § 3582(c)(1)(A), weigh against compassionate release. Among others, the § 3553(a) factors include the following:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> **(2)** the need for the sentence imposed--
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

18 U.S.C. § 3553(a).

In his plea agreement, defendant admitted to stealing from drug dealers and reselling their product to other traffickers over a three-year period while working as a police officer with the Cook County Sheriff's Office and a member of the High Intensity Drug Trafficking Area team. He sometimes confiscated narcotics under the guise of law enforcement operations, and other times robbed individuals or residences. He was convicted of approaching an individual who, unbeknownst to defendant, was working as an undercover agent, with his police car lights flashing and in a vest marked "Police," badge and holstered weapon showing, and stealing seventy pounds of marijuana, which he intended to sell for more than $300,000. Given these facts, the government argues that defendant was convicted of an "egregious" offense, having robbed a drug dealer "while

---

[2] Hypertension and COVID-19, American Journal of Hypertension, Vol. 33, Issue 5, 373-74, May 2020, *available at* https://academic.oup.com/ajh/article/33/5/373/5816609 (last visited June 25, 2020).

3

wearing a uniform and badge and while carrying a gun." Further, not only did defendant abuse his power as a sworn law enforcement officer to steal narcotics with the intent to profit from their sale, he did it not once but eight times between 2011 and 2014, plus one other occasion on which he stole contraband cigarettes.

The Court agrees with the government on this issue. Defendant committed a serious crime involving the theft of and anticipated resale of large quantities of drugs, aggravated by the fact that he abused his power as a law enforcement officer to do it. *See United States v. Ramos*, 769 F. App'x 383, 385 (7th Cir. 2019) (sentencing court was permitted under § 3553 to consider the fact that defendant abused public trust as an aggravating circumstance). The Court recognizes that defendant had no prior criminal history and is devoted to his family, but "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," and to "provide adequate deterrence for criminal conduct," 18 U.S.C. § 3553(a)(2)(A), (B), outweighs other factors. Reducing defendant's prison sentence by approximately a third, a sentence that was already near the low end of the guideline range, would not serve these important interests, given the seriousness of defendant's misconduct.

For the foregoing reasons, defendant's motions for compassionate release are denied.

Date: 6/26/2020

Jorge L. Alonso
United States District Judge

4